**Robert LECHMAN, David Harris and 3–S Board Brokers, Inc., Plaintiffs-Appellants,**

v.

**ASHKENAZY ENTERPRISES, INC., Arnold Ashkenazy, Severyn Ashkenazy, Alexis Hrundis, Gary Nielson, Albert Kallis and Mark Sussman, Defendants-Appellees.**

No. 82–2823.

United States Court of Appeals, Seventh Circuit.

Argued May 9, 1983.

Decided July 25, 1983.

Rehearing and Rehearing En Banc Denied Sept. 30, 1983.

Lawrence C. Rubin, Arvey, Hodes, Costello & Burman, Chicago, Ill., for plaintiffs-appellants.

Stanley J. Parzen, Mayer, Brown & Platt, Marvin A. Tenenbaum, Sachnoff, Weaver & Rubenstein, Chicago, Ill., for defendants-appellees.

Before PELL and CUDAHY, Circuit Judges, and GIBSON, Senior Circuit Judge.*

* The Honorable Floyd R. Gibson, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

PER CURIAM.

Plaintiffs appeal the district court's award of attorneys' fees incurred by defendants in connection with the dissolution of a temporary restraining order (TRO). We affirm the judgment of the district court.

## I.

Plaintiffs are three market makers on the Chicago Board Options Exchange. They sold some of the defendants call options for the stock of Kennecott Corporation (Kennecott). The purchases occurred through the California office of Bear, Stearns and Co., also a defendant. Within several days of the sale, Standard Oil Company of Ohio announced its intention to acquire Kennecott which caused a significant increase in the value of Kennecott shares. Plaintiffs filed suit on March 16, 1981, alleging that defendants, who were only identified as "John Doe" defendants, made these purchases on the basis of inside information undisclosed to the public in violation of federal securities law. 17 C.F.R. § 240.-10b–5. On the same day the complaint was filed, plaintiffs obtained an ex parte order temporarily enjoining Bear, Stearns and Co. from distributing to the purchasers of the Kennecott call options any monies the purchasers had earned from the purchase and sale of these call options.

Two days later, certain of the John Doe defendants filed and presented to the district court a motion to vacate the order which had frozen their property held by Bear, Stearns and Co. On March 19, 1981, defendants renewed their motion to vacate the TRO. In the various motions to vacate the TRO presented by all defendants, each defendant denied any wrongdoing in connection with the purchase of Kennecott call options and denied obtaining material inside information prior to the announcement of the Kennecott and SOHIO merger. The district court vacated its order upon a showing by defendants of sufficient resources to

satisfy any judgment entered against them in this case.

After the temporary restraining order was vacated and discovery had begun, defendants filed a motion to dismiss all the plaintiffs' claims. On September 1, 1981, the district court ruled that plaintiffs' complaint failed to plead sufficient facts to support a claim of fraud and directed plaintiffs to file a second amended complaint which incorporated the facts and circumstances they had learned through discovery.

Plaintiffs never filed a second amended complaint. Instead, on September 21, 1981, they filed a motion in which they sought voluntarily to dismiss without prejudice the complaint against all remaining defendants. The district court granted the motion on September 22, 1981, without affording defendants an opportunity to address plaintiffs' request for a voluntary dismissal without prejudice. On September 30, 1981, defendants filed their motion to amend the September 22, 1981 order of dismissal. Defendants asked the district court to modify its dismissal or to provide for dismissal with prejudice. Defendants also sought attorneys' fees and costs they incurred in defending the action.

The district court refused to allow defendants any attorneys' fees. The district court specifically refused to award attorneys' fees on the basis of Fed.R.Civ.P. 64. That rule states: "[A]ll remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held . . ." (with qualifications not applicable here). Under Illinois law, "the law of the state in which the district court [was] held," attorneys' fees would be an available remedy, even if the attachment was obtained in good faith. *Gale v. Transamerica Corp.,* 65 Ill.App.3d 553, 22 Ill.Dec. 92, 95, 382 N.E.2d 412, 415 (1978); Ill.Ann.Stat. Ch. 11, § 1 *et seq.* (Smith-Hurd 1963 and Supp.1982). The district court at this point refused to apply the Illinois law because it said it had not been proceeding under Rule 64, but had

issued the restraining order pursuant to the district court's inherent equitable authority.

However, the district court changed its position upon defendants' "Motion for Reconsideration." The court then decided that it did not have the inherent equitable power to issue the restraining order, and the only authority for the attachment order was Rule 64. The court then evaluated Illinois law and concluded that under the Illinois Attachment Act defendants were entitled to attorneys' fees. The court awarded fees totaling $14,372.00.

## II.

The key to analyzing this case is understanding what issue is before us for review. As a preliminary matter, there is no dispute about the way in which the district court applied the Illinois Attachment Act. The question centers around whether the court should have applied the act at all. The more important point is understanding how narrow the issue on appeal is.

Plaintiffs devote most of their briefs to arguing that the district court was incorrect in saying that it lacked the inherent equitable authority to issue the TRO. The question of the scope of the district court's equitable authority is interesting, but it is not the issue presented on appeal. We are reviewing an order of the district court awarding attorneys' fees pursuant to Rule 64. If that rule was properly applied, we must affirm the judgment of the district court. Even if the district court could have relied on other sources of authority in issuing its TRO, we should not reverse if the court had the authority to render the judgment that it did. We should not and will not issue an advisory opinion on the extent of a district court's inherent equitable authority. The fact that the judgment appealed from was prompted by a motion for reconsideration is irrelevant; it is the "reconsidered" judgment, the one awarding attorneys' fees, from which the appeal has been taken. Therefore, the issue is not whether the district court *could* have used its equitable authority to issue a TRO. The issue is whether the district court erred in relying on Rule 64 in issuing the TRO and awarding attorneys' fees.

With the issue thus narrowed, the case can be disposed of easily. Rule 64 makes available to district courts all remedies providing for seizure of property for the purpose of securing satisfaction of the judgment available under state law except as modified by federal statute. Attachment is specifically listed as an available remedy. The TRO clearly was issued "for the purpose of securing satisfaction of the judgment ultimately to be entered." This is evidenced by the fact that the TRO was lifted as soon as the John Doe defendants proved their solvency. Furthermore, the TRO appears to have been an attachment, one of the specifically listed available remedies. The district court itself characterized the TRO as an attachment. *Black's Law Dictionary* (5th ed. 1979) defines an attachment: "[T]oday the writ of attachment is used primarily to seize the debtor's property in order to secure the debt or claim of the creditor in the event that a judgment is rendered." *See also* 8 Fed.Proc., L.Ed. § 21:15 (1982).

Regardless of what other authority may or may not exist for the district court's TRO, the conclusion is inescapable that Rule 64 does provide authority for the order of the district court.

Accordingly, the judgment of the district court is affirmed.